IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA, )
Plaintiff, )
)
vs. ) No. 12-20003-03-CM
)
STEVEN M. HOHN, )
Defendant )
_________________________________ )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FROM GLOBAL POSITIONING SYSTEM (GPS) DEVICE**

COMES NOW the Plaintiff, United States of America, by and through Terra D. Morehead, Assistant United States Attorney for said District, and here responds in opposition to the defendant's Motion to Suppress Evidence from Global Positioning System (GPS) Device and the Memorandum in Support, filed on July 2, 2012. (Docs. 153, 154.) The Government asserts the motion should be denied based upon the following:

## I. INDICTMENT AND CHARGES

Steven Hohn is currently facing drug and firearm related charges, along with fourteen other individuals contained in a Second Superseding Indictment, which was filed on May 22, 2012. (Doc. 84.) Hohn is charged with one count of conspiracy to possess with the intent to distribute or to distribute 50 grams or more of methamphetamine between October 2010 and November 30, 2011, in violation of 21

U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(viii); and 18 U.S.C. § 2 (Count 1); three counts of being an unlawful user in possession of firearms, in violation of 18 U.S.C. § 922(g)(2) (Count 13 - between December 11, 2011 and December 12, 2011; Count 14 - December 23, 2011; Count 15 - between August 24, 2011 and November 30, 2011); and, one count of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), 5871 and 5845(a) (Count 16). (*Id.*)

## II. STATEMENT OF FACTS

The defendant's motion has a general overview of the facts herein. The Government will supplement these facts at the motion hearing by way of sworn testimony and the introduction of exhibits.

## III. ARGUMENT AND AUTHORITIES

Relying on the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945 (2012), the defendant argues that officers illegally placed a GPS tracking device on the 1997 Ford F150 truck on July 24, 2011 and monitored its movements for several months. *See Jones*, 132 S. Ct. at 949 (holding "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search,'" triggering the Fourth Amendment's protections). He then argues that officers illegally used the information supplied by this GPS device to subsequently apply for a court-authorized search warrant on

November 11, 2011. Accordingly, he seeks to suppress all information obtained as a result of the placement of the device on the vehicle in July 2011 and, because the information was used to obtain the November 11, 2011 search warrant, he also asserts the information from that order should also be suppressed.

In July 2011, the officers had an objectively reasonable good-faith belief that their conduct was lawful, thus triggering application of the exclusionary rule's good-faith exception. In *United States v. Knotts*, 460 U.S. 276, 281 (1983), the police, with the consent of a chemical company, placed a beeper in a five-gallon drum of chloroform in order to track the movements of a defendant and discover the location of a clandestine drug laboratory. Using visual surveillance, as well as the signal emitted from the beeper when police lost visual contact, law enforcement officials traced the car to a secluded cabin, where the defendant and others had been manufacturing illicit drugs. The Supreme Court held that this monitoring did not violate the Constitution because "[t]he governmental surveillance conducted by means of the beeper in this case amounted principally to the following of an automobile on public streets and highways. . . . A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* at 281. The Court noted that, in Knott's case, "[a] police car following [a defendant] at a distance throughout his journey could have observed him

leaving the public highway and arriving at the cabin. . . . [T]here is no indication that the beeper was used in any way to reveal information . . . that would not have been visible to the naked eye." *Id.* at 285.

Similar to the circumstances in *Knotts*, the defendant in this case was traveling on public roads during the time he was monitored. While the GPS information from the Ford F150 truck could have aided the police in determining the defendant's location, that same information could have also been obtained through visual surveillance. Accordingly, *Knotts* prevents the defendant from claiming any reasonable expectation of privacy in his movements on the highway, even if those movements were revealed by information provided by the GPS device attached to the truck. *Cf. id.* at 284 ("Insofar as respondent's complaint appears to be simply that scientific devices such as the beeper enabled the police to be more effective in detecting crime, it simply has no constitutional foundation. We have never equated police efficiency with unconstitutionality, and we decline to do so now."); *see also United States v. Marquez*, 605 F.3d 604, 609 (8th Cir. 2010) ("Acosta neither owned nor drove the Ford and was only an occasional passenger therein. He therefore lacked standing to contest the installation and use of the GPS device.").

The defendant cannot argue that the information supplied by the GPS tracker was or is the sole evidence upon which he has been charged or arrested. Officers had

independent sources that supplied them with lawfully obtained locational information for the truck, which included visual surveillance and pole camera surveillance at several locations, thus the exclusionary rule does not apply.[1]

> "[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation."

*Murray v. United States*, 487 U.S. 533, 537 (1988) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)).

Irrespective of the information supplied by the GPS device attached to the Ford

---

[1] In *United States v. Sanchez*, 608 F.3d 685, 691 (10th Cir. 2010), the Tenth Circuit explained how the requirement of but-for causality and the exceptions to the exclusionary rule inter-relate:

> To succeed in suppressing the marijuana, Sanchez must show the discovery "would not have come to light *but for* the government's unconstitutional conduct." *United States v. Nava–Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (emphasis added). If Sanchez shows "but for" causation, the government must then prove the "evidence sought to be suppressed is not 'fruit of the poisonous tree' either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *Id.*; *see also United States v. Torres–Castro*, 470 F.3d 992, 999 ("'But for' causality is a necessary, but not a sufficient, requirement for suppression.").

F150 truck, the officers would have found the vehicle because they had independent sources through which they lawfully obtained locational information regarding its whereabouts. This lawfully obtained information provided an independent basis for the officers' discovery of the evidence, so the exclusionary rule does not require that it be suppressed.

Applying the Court's balancing test to GPS tracking of vehicles on public roads, neither a warrant nor probable cause should be required. *See Marquez*, 605 F.3d at 610; *United States v. Michael*, 645 F.2d 252, 257-259 (5th Cir. 1981) (en banc). The intrusion occasioned by installation of a tracking device on a vehicle is minimal. Installation is much less intrusive than the typical stop and frisk. Nothing from the vehicle is removed and usually no enclosed area is entered. A GPS tracking device conducts neither a visual nor an aural search of the item to which it is attached. *Cf. Smith v. Maryland*, 442 U.S. 735, 741-742 (1979) (noting that pen register records only the numbers dialed from a phone and not the contents of any conversation). The device, *by itself*, does not reveal who is in the car as driver or passenger, what the occupants are doing, or what they do when they arrive at their destination. It provides information only about the vehicle's location and the information that the tracking device reveals about the vehicle's location can also be obtained, as it was herein on occasion, by means of visual surveillance. The Supreme Court "has recognized significant

differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts." *United States v. Chadwick*, 433 U.S. 1, 12 (1977); *see also Cardwell v. Lewis*, 417 U.S. 583, 590 (1974); *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976).

Because the officers originally attached the GPS device to the vehicle with an objectively reasonable good-faith belief that their conduct was lawful, this Court should apply the good-faith exception to the exclusionary rule. The purpose of the exclusionary rule is to deter future Fourth Amendment violations, not to remedy past ones. *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). The Court has emphasized that "the exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence.'" *Herring v. United States*, 555 U.S. 135, 141 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). Because suppression imposes a "costly toll upon truth-seeking and law enforcement objectives" by "letting guilty and possibly dangerous defendants go free," a court must find that "the benefits of deterrence . . . outweigh the costs" before excluding evidence obtained in violation of the Fourth Amendment. *Id.* (quotation marks omitted); *Davis*, 131 S. Ct. at 2427 ("For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs. . . . Our cases hold that society

must swallow this bitter pill when necessary, but only as a 'last resort.'").

"To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Suppression may therefore be warranted "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.*; *Davis*, 131 S. Ct. at 2427. "But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force and exclusion cannot pay its way." *Davis*, 131 S. Ct. at 2427-28 (internal citations and quotation marks omitted).

The good-faith exception applies here because the officers attached the GPS device in July 2011 to the Ford F150 truck with an objectively reasonable good-faith belief that their conduct was lawful. Indeed, in attaching the GPS device to the vehicle and monitoring the movements of the vehicle initially without a warrant, the officers were acting in reasonable reliance on settled law, including (1) settled law from the majority of the circuit courts of appeal holding such conduct lawful; (2) the absence of precedent from the Tenth Circuit alerting them that their conduct was unlawful, and (3) analogous precedent from the Supreme Court, namely, *Knotts*,

holding that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another," 460 U.S. at 281. *See Davis*, 131 S. Ct. at 2434 (stating that "when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply"); *United States v. McCane*, 573 F.3d 1037, 1044 (10th Cir. 2009) ("a police officer who undertakes a search in reasonable reliance upon the settled case law of a United States Court of Appeals, even though the search is later deemed invalid by Supreme Court decision, has not engaged in misconduct").

Indeed, on the date that the officers attached the device to the Ford F150 truck, the three federal circuit courts of appeal that had addressed the issue had unanimously concluded that police did not implicate the Fourth Amendment warrant requirement by monitoring a GPS tracking device on a car in public.[2] *See United States v. Marquez*, 605 F.3d 604, 609-10 (8th Cir. May 21, 2010) (holding that a warrant was not required to install a GPS tracking device on the defendant's vehicle for a reasonable period of time); *United States v. Pineda-Moreno*, 591 F.3d 1212, 1216–17 (9th Cir. Jan. 11, 2010) (holding that use of a GPS device to track the defendant's

---

[2]While there was some unauthorized monitoring of the truck, the Government has no intention of introducing any evidence of GPS data secured without a warrant while the truck was parked within the curtilage of the defendant's residence, where he would have arguably had an expectation of privacy. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001).

vehicle over a four-month period did not violate the Fourth Amendment); *United States v. Garcia*, 474 F.3d 994, 996-98 (7th Cir. Feb. 2, 2007) (holding that a warrant was not required to conduct continuous electronic tracking of the defendant's vehicle using a GPS device).

Although *Jones* created a circuit split when it was decided by the D.C. Circuit on August 6, 2010, it was the minority view among the circuits when law enforcement attached the GPS device. *See United States v. Maynard/Jones*, 615 F.3d 544 (D.C. Cir. Aug. 6, 2010) ("*Jones*").[3] Moreover, this decision would not have put the officers

---

[3] Before the D.C. Circuit, the defendant in *Jones* argued that his conviction should be overturned because the police violated the Fourth Amendment's prohibition against "unreasonable searches" by tracking his movements 24 hours per day for four weeks with a GPS device they had installed on his Jeep without a valid warrant. 615 F.3d at 555. The court considered whether the officers' use of the GPS device to track the defendant constituted a search, framing the issue as "whether 'wholesale' or 'mass' electronic surveillance of many individuals requires a warrant," noting that "in *Knotts* the Court actually reserved the issue of prolonged surveillance," and observing that "[t]hat issue is squarely presented in this case" where "the police used the GPS device not to track Jones's movements from one place to another, but rather to track Jones's movements 24 hours a day for 28 days as he moved among scores of places, thereby discovering the totality and pattern of his movements from place to place to place." *Id.* at 558. The court held "*Knotts* does not govern this case and the police action was a search because it defeated Jones's reasonable expectation of privacy. *Id.* at 555-56. The court did *not* find that the officers' *installation* (as opposed to monitoring) of the GPS device on the vehicle was a trespassory search on an effect of the defendant's, as the Supreme Court ultimately found in *Jones*. *See Jones*, 132 S. Ct. at 949-50 & 953 n.8 (describing installation of GPS device on underbody of defendant's vehicle as a trespassory search upon an effect of the defendant's implicating the Fourth Amendment).

on notice that his conduct was unlawful because this decision did *not* hold that the officers' installation of the GPS device on the vehicle constituted a trespassory search, *see supra* n.7, so it could not have put Deputy Williams on notice that installing the GPS device on the Ford F150 truck was a search.

The Court held in *Jones* that the Government's trespass on property in Jones's possession to obtain information was a search "within the meaning of the Fourth Amendment when it was adopted." *Jones*, 132 S. Ct. at 949; *see id.* at 949-950 (reasonable-expectation-of-privacy standard did not supplant Fourth Amendment protection against "common-law trespass" into protected areas). The Court emphasized that the Fourth Amendment is "an 18th-century guarantee against unreasonable searches, which * * * must provide *at a minimum* the degree of protection it afforded when it was adopted." *Id.* at 953 (emphasis in original). Thus, common-law principles governing liability for trespass may be relevant in determining the scope of Fourth Amendment protection against government trespasses.

However, *Jones* did not clearly resolve whether a Fourth Amendment search occurs when a GPS device is installed or only when the device is

activated. The Government asserts there was no search until the device was activated. *See Jones*, 132 S. Ct. at 951 n.5 (search requires "an attempt to find something or to obtain information"); *cf. United States v. Karo*, 468 U.S. 705, 712 (1984) (transfer to defendant of a can containing an unmonitored beeper was not a search; "we have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment").

The Court also left open, whether the search requires a warrant, probable cause, or something less. *See Jones*, 132 S. Ct. at 954; *but see id*. at 964 (Alito, J., concurring) ("where uncertainty exists with respect to whether a certain period of GPS surveillance is long enough to constitute a Fourth Amendment search, the police may always seek a warrant"). In the instant case, a warrant was eventually obtained. The defendant suggests that because the affidavit for probable cause contained information from the unauthorized GPS installation, then the information obtained following the warrant should likewise be suppressed. However, as the Court will easily see upon review of the affidavit submitted to the court in November, it contained little information about the July to November monitoring. There was certainly sufficient probable cause for the issuance of the warrant for a GPS tracker on the truck, independent of the unauthorized information.

In the context of probable cause to support installation and monitoring of

a tracking device, the courts typically have framed the pertinent inquiry as whether, given all the facts set forth in the warrant application, there is a fair probability that use of a tracking device will *lead* to evidence of a crime. The warrant application should therefore recite the facts establishing probable cause to believe that the vehicle is being used in furtherance of specified criminal activity and that use of the tracking device will lead to evidence, fruits, or instrumentalities of that crime, or to the identification of individuals involved in those crimes. *See*, *e.g.*, *United States* v. *Kupper*, 693 F.2d 1129, 1131 n.2 (5th Cir. 1982) (probable cause to believe beeper "would assist the authorities in uncovering this operation"); *United States* v. *Degaule*, 797 F. Supp. 2d 1332, 1363 n.24 (N.D.Ga. 2011) (probable cause to believe that tracking the vehicle would reveal a crime or evidence of a crime); *United States* v. *Coleman*, No. 07-20357, 2008 WL 495323, at *2 (E.D. Mich. Feb. 20, 2008) ("probable cause to believe that the monitoring of the [tracking device] would lead to discovery of violations of the federal drug statutes"). The Court will see that the search warrant in November and the extension in December had sufficient probable cause to support the authorization for the installation of the GPS tracker.

Some courts of appeals have recognized when the initial Fourth Amendment violation was "close * * * to the line of validity" and the circumstances of the illegal search were disclosed to the magistrate before he or

she issued the subsequent warrant; in this circumstance, officers may be able to rely on the good-faith exception with respect to evidence obtained pursuant to the warrant. *United States v. McClain*, 444 F.3d 556, 565-566 (6th Cir. 2005) (quoting *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989)); *see also, e.g.*, *United States v. Fletcher*, 91 F.3d 48, 51-52 (8th Cir. 1996); *cf. United States v. Thomas*, 757 F.2d 1359, 1368 (2d Cir. 1985). When Deputy Williams applied for the search warrant he clearly informed the magistrate what information was and was not the result of the July to November GPS tracker.

It is important to note that the initial unauthorized GPS installation involved a simple slap-on, battery-powered device, as opposed to the hardwired tracking device which typically involves a more significant intrusion and required a warrant under pre-*Jones* precedent. The fact that law enforcement sought court authorization to obtain the wired tracker further demonstrates their attempts to comply with legal precedence. *Compare United States v. Hufford*, 539 F.2d 32, 34 (9th Cir. 1976) ("Had the agents not resorted to a warrant, entrance into the garage and the opening of the truck's hood would have been an [unlawful] invasion of an area in which Hufford had a reasonable expectation of privacy."), *with Garcia*, 474 F.3d at 996 (no seizure where "device did not affect the car's driving qualities [and] did not draw power from the car's engine or battery"), *and Burton*, 698 F. Supp. 2d at 1308 ("The device was not

placed on the interior of the vehicle, and required no dismantling, opening, or otherwise significant disturbance of the vehicle to attach or activate it.").

Given the legal backdrop, no basis exists for this Court to conclude that the law enforcement officers' conduct was sufficiently deliberate or culpable to warrant application of the exclusionary rule. As explained, the purpose of the exclusionary rule is to deter deliberate, reckless, and grossly or systematically negligent police conduct; it does not apply "when the police act with an objectively reasonable good faith belief that their conduct is lawful." *Davis*, 131 S. Ct. at 2427. Based on the then-existent majority view among the circuit courts of appeals that such installation and monitoring were lawful as well as the analogous precedent of *Knotts*, and the absence of contrary case law in the Tenth Circuit, this Court may fairly conclude that the officers acted with an objectively reasonable belief that their conduct was lawful. *See Leon*, 468 U.S. at 922 n.3 ("The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal . . . [considering] all of the circumstances."). Thus, because no deterrent value would be gained by suppressing the evidence in this case, no basis exists to apply the exclusionary rule.

## **CONCLUSION**

For the foregoing reasons and the evidence that will be presented at the hearing

on the motion, this Court should deny the defendant's Motion to Suppress.

Respectfully submitted,

BARRY R. GRISSOM
United States Attorney

*s/ Terra D. Morehead*
TERRA D. MOREHEAD
Kan. S.Ct. No. 12759
Assistant United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, KS 66101
Tel.: (913) 551-6730
FAX: (913) 551-6541
Terra.Morehead@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this11th day of September, 2012, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*s/ Terra D. Morehead*
TERRA D. MOREHEAD
Assistant United States Attorney