**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA, )
)
)
       **Plaintiff,** )
)
v. )
) Case Nos. 12-20003-03-CM
) 12-20003-10-CM
**STEVEN M. HOHN** )
**and** )
**MICHAEL C. REDIFER,** )
)
       **Defendants.** )
)

## MEMORANDUM AND ORDER

After a ten-day trial, a jury found defendants Steven Hohn and Michael Redifer guilty of conspiracy to distribute and possess with intent to distribute methamphetamine. The jury also found defendant Hohn guilty of a number of firearms charges, but the main focus of the motions now before the court is the conspiracy convictions. After trial, both defendants filed motions for judgment of acquittal and/or a new trial (Docs. 322 and 323). Defendant Redifer requests relief on ten different grounds:

(1) The trial court erred in admitting exhibits #124 and #138, photographs of Mr. Redifer with 3 other co-defendants holding guns;

(2) The trial court erred in allowing government expert witness Deputy Perry Williams to testify that guns and violence are a part of the drug trade;

(3) The trial court erred in failing to declare a mistrial when a government witness testified to a "shoot-out" in Kingdom City;

(4) The trial court erred in failing to declare a mistrial when a government witness testified to defendant's arrest in Garnett, Kansas;

-1-

(5) The trial court erred in admitting evidence of Mr. Redifer's conviction for Possession with Intent to Sell Methamphetamine;

(6) The trial court erred in not giving defendant's proposed instruction nos. 3, 4, 7, 8 and an instruction that there can be no conspiracy between a defendant and a government agent;

(7) The trial court erred in giving instruction no. 21, aiding and abetting;

(8) There was insufficient evidence of defendant's participation in the conspiracy alleged by the government[,] and the evidence did not support the government's assertion there was one single overall conspiracy;

(9) The indictment varied in the duration of defendant's alleged involvement in the conspiracy and the quantities of drugs;

(10) The accumulation of error should result in the Court's order granting a judgment of acquittal and/or new trial.

(Doc. 322 at 1–2.) Defendant Hohn filed a motion joining in all of defendant Redifer's arguments, and added one more ground for relief: that the court erred when it admitted evidence resulting from warrantless GPS tracking of defendant Hohn's vehicle.

In reviewing a motion for judgment of acquittal, the court views the evidence in the light most favorable to the government. *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999) (citation omitted). The court must grant a motion for judgment of acquittal when the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). On the other hand, the court must uphold the jury's guilty verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (citation and quotation marks omitted). The court considers both direct and circumstantial evidence, plus reasonable inferences drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993) (citation omitted).

In considering a motion for new trial, the court has broad discretion. *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987) (citation omitted). The standards for granting a new

trial are not as strict as the standards for granting judgment of acquittal. Federal Rule of Criminal Procedure 33 provides that a court may grant a new trial "if the interest of justice so requires." Additionally, any error that would require reversal may justify a new trial. *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000) (citation and quotation marks omitted). The court may weigh the evidence and assess witness credibility. *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999) (citation omitted). A new trial is warranted if, "after weighing the evidence and the credibility of the witnesses, the court determines that 'the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred.'" *United States v. Gabaldon*, 91 F.3d 91, 93–94 (10th Cir. 1996) (quoting *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994)). But courts disfavor new trials, *United States v. Gleeson*, 411 F.2d 1091, 1093 (10th Cir. 1969) (citation omitted), and exercise great caution in granting them, *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997) (citation omitted).

With these standards in mind, the court now turns to defendants' arguments.

## I. Admission of Exhibits # 124 and # 138

Defendant Redifer first argues that the court erred in admitting photographs showing defendant Redifer on a couch with three co-defendants (including defendant Hohn), all holding guns. Before trial, the court held the photographs inadmissible. But after defendant Redifer's counsel made an opening statement suggesting that defendant Redifer was not involved with most of his co-defendants and made similar suggestions through cross-examination, the government renewed its request for admission and offered a different basis for relevance. At that time, the court ruled that the exhibits were admissible.

Defendant Redifer contends that admission was not needed to contradict counsel's statements in opening argument because counsel's statements are not evidence. Further, there was ample

evidence to show a relationship between defendant Redifer, Tracy Rockers, Michael Quick, and Kerry Randall without the photos. Defendant Redifer argues that the photographs were irrelevant, highly inflammatory, and served only to mislead and confuse the jury.

The photos were relevant and more probative than prejudicial. They served to demonstrate the relationship between both defendants and other members of the conspiracy, during the time frame of the conspiracy. This corroborated testimony presented at trial, but not to the point of being repetitive or cumulative. The court finds no error in its decision to admit the photographs.

**II.     Deputy Perry's Testimony**

Second, defendant Redifer argues that the court should not have let Deputy Perry Williams testify that drug traffickers commonly protect their money and drugs with weapons and that violence is associated with drug trafficking. Defendant Redifer says this testimony was (1) irrelevant under Fed. R. Evid. 401; (2) improper character evidence under Rule 404; (3) improper opinion evidence under Rule 702; and (4) prejudicial to a degree that outweighed any probative value.

Deputy Williams's testimony was proper. First, it was relevant. There was evidence that defendants Redifer and Hohn possessed firearms, bringing into question why they may have possessed them. Second, the testimony did not serve as improper character evidence. It was properly admitted to help the jury understand the business of drug trafficking. Third, Rule 702 permits law enforcement officers to testify about the use of firearms in drug trafficking. *See United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009). And fourth, the probative value of the testimony far outweighed any potential prejudice. The court finds no error in its admission of Deputy Perry's testimony.

**III.    "Kingdom City" Comment**

The court ruled before trial that evidence of an alleged shooting in Callaway County, Missouri (specifically, in Kingdom City) could not be presented to the jury. Inadvertently, one of the

government's witnesses—Rebecca Zehring—mentioned the shooting. Defendant Redifer moved for a mistrial. The court then inquired of each juror whether he or she could ignore the statement and remain impartial. Each juror said yes. The court also advised the jurors that defendants were not involved in the shooting. But defendants contend that this was not enough. According to defendants, Ms. Zehring's comment simply had too much potential to impact the jury, in conjunction with the other evidence at trial of firearms and violence.

The court disagrees. At the time of the incident, the court considered the standards for a mistrial and took measures to ascertain the impact, if any, of the inadvertent statement. The jurors assured the court that they could follow the court's instructions. In light of these assurances, the amount of evidence presented at trial, the length of trial, and the court's instructions to disregard the statement, the court concludes that there was no cause for a mistrial.

**IV.     Defendant Redifer's Arrest in Garnett, Kansas**

Before trial, defendant Redifer asked the court to exclude evidence related to his arrest in Garnett, Kansas. The court denied the request as moot because the government represented that it would not seek to admit such evidence. But during trial, Michael Quick mentioned defendant Redifer's arrest. Again, defendant Redifer requested a mistrial. The court denied the request. Defendant Redifer now submits that the mention of his arrest had substantial influence and impact on the jury, compromising his right to a fair trial.

Defendant Redifer overstates the potential impact of the statement. Like the "Kingdom City" comment, it represented only a miniscule part of the entire trial. The reference was made in passing, and the court does not believe that a mistrial was warranted in light of all the evidence presented at trial.

## V. Defendant Redifer's Conviction for Possession with Intent to Sell Methamphetamine

Defendant Redifer's fifth claim of error is this: the court admitted evidence of his conviction for possession with intent to sell methamphetamine. Defendant Redifer characterizes the conviction as a "prior conviction," which was a source of conflict before trial. The conviction actually happened during the time frame of the conspiracy, on April 24, 2011. Defendant Redifer contends, however, that the methamphetamine that Kerry Randall supplied to defendant Redifer on this date came from Michael Roark, who was not charged as part of the conspiracy.

As the court previously held, evidence of the conviction was relevant, and its probative value was not substantially outweighed by a danger of unfair prejudice. The incident occurred during the time frame of the conspiracy alleged, involved an alleged co-defendant, and was of the nature of the crimes charged in the conspiracy. Moreover, the indictment charged that there were persons both known and unknown who were a part of the conspiracy. The conviction was intrinsic to the conspiracy charged and was inextricably intertwined with the charge. *Cf. United States v. Robles*, 434 F. App'x 736, 739 (10th Cir. 2011) (discussing how Rule 404(b) does not apply to evidence of an act that is intrinsic to the crime charged). The court finds no error in its prior decision.

## VI. Jury Instructions Not Given

Next, defendant Redifer alleges error in the court's jury instructions. Specifically, he contends that the court should have given his proposed instructions 3, 4, 7, 8, and an instruction that there cannot be a conspiracy between a defendant and a government agent. According to defendant Redifer (and defendant Hohn, by way of joining defendant Redifer's motion), all of these proposed instructions were correct statements of the law.

The court will assume for purposes of this motion that defendant Redifer is right as to four of his proposed instructions; with the exception of proposed instruction 3, they were a correct statement of the law. But relief does not necessarily follow from this assumption.

First, proposed instruction 3. This instruction addressed joint buyer relationships, and appears based on a Seventh Circuit case, *United States v. Haywood*, 324 F.3d 514, 517 (7th Cir. 2003), which was utilizing Seventh Circuit pattern jury instructions. The Tenth Circuit pattern instruction on conspiracy charges does not specifically reference "simple joint buyer relationships," but it adequately advises the jurors on the requirements to find that a conspiracy existed.

Defendant Redifer now states that what he was really requesting was a buyer-seller relationship instruction. (Doc. 322 at 8.) But the buyer-seller rule only applies to a mere buyer. *See United States v. Flores*, 149 F.3d 1272, 1277 (10th Cir. 1998) (explaining that "the purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy.") (citation and quotation marks omitted). Defendant Redifer's proposed instruction was not a correct statement of Tenth Circuit law on buyer-seller transactions. The court stands by its decision not to give the instruction.

Second, proposed instruction 4. This instruction was on proof of a conspiracy, and included language pulled directly from a Tenth Circuit case. While the language was accurate, the court maintains that the Tenth Circuit pattern instruction adequately apprises the jury of the law on conspiracy.

Third, proposed instruction 7. At trial, defendant wanted the court to modify the instruction on Rule 404(b) evidence to include language from his proposed instruction 7. The court finds that its instruction, as-is, was an accurate statement of the law. The court also concludes that defendant's

proposed instruction was too specific, potentially highlighting some evidence admitted in the case. The court properly declined to give defendant's instruction.

Fourth, proposed instruction 8. This instruction discussed the consideration of evidence that witnesses have already pleaded guilty to the same conspiracy charge as defendants. Defendant Redifer drafted the instruction based on a Third Circuit case and pattern instructions from the Eighth and Ninth Circuits. The content of this instruction was adequately covered by the court's instruction numbers 4 (on witness credibility), 5 (on witnesses convicted of a felony), and 6 (on accomplice testimony). Defendant Redifer's proposed instruction 8 was unnecessary.

Finally, the instruction about a conspiracy between a defendant and a government agent. As the court explained before instructing the jury, this instruction was unnecessary. Defendant Redifer's concern was that there was evidence that Tracy Rockers sold to a government agent. But she sold drugs that had been sold to her as part of the conspiracy. And she was not on trial, which would make the instruction potentially confusing to the jury. Again, the court stands by its ruling at trial.

## VII. Aiding and Abetting Instruction

Next, defendant Redifer claims that the court erred in giving an aiding and abetting instruction, for a number of reasons: (1) 18 U.S.C. § 2 was only listed in the indictment numerically—failing to give proper notice that defendants were charged with aiding and abetting; (2) the instruction violated defendant Redifer's constitutional rights; (3) the evidence was insufficient to show that defendant Redifer aided and abetted a single conspiracy; (4) there were multiple conspiracies in the case, not a single conspiracy; and (5) the instruction was confusing and misleading.

The indictment properly charged aiding and abetting, giving defendants adequate notice of the charges brought against them. *Cf. United States v. Alexander*, 447 F.3d 1290, 1298 (10th Cir. 2006) (holding that the indictment need not even charge aiding and abetting for the court to instruct the jury

on the theory) (citation omitted). And the government presented sufficient evidence to let the jury determine whether defendants were guilty of participating in or aiding and abetting a single conspiracy. The government presented evidence from which a reasonable jury could have found that other parties participated in the conspiracy and that defendant Redifer and/or Hohn "intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about." Tenth Circuit Criminal Pattern Jury Instruction 2.06; *see also United States v. Anderson*, 189 F.3d 1201, 1207 (10th Cir. 1999) (citation omitted). Particularly with respect to defendant Redifer—about whom there was testimony suggesting more limited participation in drug transactions with a limited number of people—any rational trier of fact could have found defendant Redifer guilty of conspiracy based on an aiding and abetting theory. The verdict is not contrary to the weight of the evidence.

The portion of this argument dealing with single/multiple conspiracies is discussed more in the next section on conspiracy evidence. Further, the instruction was neither confusing nor misleading. It was drawn from the Tenth Circuit pattern instruction on aiding and abetting, and the court finds that it was properly given.

**VIII. Conspiracy Evidence**

Defendant Redifer also contends that the evidence did not show that he participated in the conspiracy or that there was, in fact, one single conspiracy. He claims that the evidence showed only that he bought drugs for personal use, but not that he was participating in a single overall conspiracy. The lack of a single conspiracy was a recurring theme in defendants' presentation of their cases. For this reason, the court instructed the jury on the difference between a single conspiracy and multiple conspiracies. (Doc. 314 at 24.) The jury was instructed specifically that "[p]roof of several separate

conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the several conspiracies which is proved is the single conspiracy charged in the indictment." (*Id.*)

Viewed in the light most favorable to the government, the evidence was sufficient to support finding a single conspiracy. To prove a conspiracy, the government was required to show: (1) an agreement to violate the law; (2) defendant's knowledge of the conspiracy's objective; (3) defendant's knowing and voluntary participation; and (4) interdependence. Tenth Circuit Criminal Pattern Jury Instruction 2.19; *see also United States v. Keck*, 643 F.3d 789, 794 (10th Cir. 2011) (citations omitted). The government established these elements by demonstrating that there was an overall agreement to sell and buy methamphetamine. There was no evidence of a formal or express agreement, but this evidence was unnecessary. *United States v. Whitney*, 229 F.3d 1296, 1301 (10th Cir. 2000) (holding that a conspiracy agreement may be express or implied) (citation omitted). Neither defendant Redifer nor defendant Hohn may have known the full scope of the agreement or known all of the members of the conspiracy, but there was evidence that they knew the conspiracy's objective: to distribute methamphetamine and possess with intent to distribute methamphetamine. *See United States v. Acosta-Gallardo*, 656 F.3d 1109, 1124 (10th Cir. 2011) (citation omitted). Furthermore, their knowing and voluntary participation in the conspiracy can be presumed by their acts in furtherance of the conspiracy—i.e., distribution of methamphetamine. *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994) (citation omitted).

As for interdependence, the evidence was also sufficient. The government shows interdependence when it establishes that "each coconspirator's activities constitute essential and integral steps toward the realization of a common, illicit goal." *United States v. Carter*, 130 F.3d 1432, 1440 (10th Cir. 1997) (citation omitted). A member of the conspiracy's actions are interdependent if they "facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole."

*United States v. Horn*, 946 F.2d 738, 740–41 (10th Cir. 1992) (citation omitted). Moreover, circumstantial evidence can be sufficient to establish interdependence, and even a single act can meet the requirement. *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009) (citations omitted).

Here, to be successful in the objective of the conspiracy, each member had to fulfill his or her role. The success of the conspiracy did not rise or fall on one particular member, but they all had to work together, and the government presented evidence that they did work together for a shared mutual benefit. There was evidence that they depended on each other for supplies and sales. They used multiple sources to keep the distribution chain going, and if one source did not have any methamphetamine, they would use another one from the same group. At different times, most of the members of the conspiracy (including defendants Redifer and Hohn) served as both a source and a customer. Both defendants were fronted methamphetamine so that they had to sell it to get money to pay their suppliers for it, which is indicative of interdependence. *See, e.g.*, *Acosta-Gallardo*, 656 F.3d at 1124 ("Acosta–Gallardo's advancing drugs to Alvarado on credit facilitated Alvarado's ability to sell the drugs because he did not need to pay for them up front. Acosta-Gallardo could not profit unless Alvarado could successfully sell the drugs and pay Acosta-Gallardo back for the drugs advanced."). All of this evidence, considered together, was sufficient to establish interdependence.

In determining whether the evidence showed a single conspiracy or multiple conspiracies, courts look in particular to interdependence. *United States v. Fishman*, 645 F.3d 1175, 1189 (10th Cir. 2011) (citation omitted). A distinguishing factor is that a single conspiracy has a common, illicit goal. *See Acosta-Gallardo*, 656 F.3d at 1124 (citations omitted). The mere presence of multiple suppliers and dealers does not necessarily mean that there are separate conspiracies. *United States v. Small*, 423 F.3d 1164, 1184 (10th Cir. 2005) (citation omitted).

For the reasons identified above, the evidence of interdependence in this case is such that the jury could have reasonably found the existence of one conspiracy instead of multiple conspiracies. Under the standards for an acquittal, the verdict is one that any rational trier of fact could have reached. Under the standards for a new trial, the verdict is not contrary to the weight of the evidence. Defendants are not entitled to post-trial relief.

**IX.     Variance from Indictment**

For his ninth argument, defendant Redifer submits that the evidence presented established facts that varied from those alleged in the indictment. Again, defendant Redifer argues that the evidence showed multiple conspiracies instead of one single conspiracy and that there was insufficient evidence that defendant Redifer aided or abetted any alleged conspiracy. The court has already addressed these arguments. He also alleges the following differences from the charges in the indictment: (1) defendant Redifer was not part of a single conspiracy during the time frame alleged; (2) the drug quantity alleged in the indictment was inaccurate because of the multiple conspiracies; and (3) the government offered evidence of transactions outside of the dates listed in the indictment.

The Fifth Amendment is violated when a defendant is tried on charges different from those handed down by the grand jury. When evidence at trial establishes facts different from the indictment, a variance results. *United States v. Ailsworth*, 138 F.3d 843, 848 (10th Cir. 1998) (citation omitted). A variance is reversible error only when it "affects the substantial rights of the accused." *Id.*

The second of the three specifically-listed arguments fails because the multiple conspiracies theory fails. The first and third fail for two reasons: There was ample evidence that defendants Redifer and Hohn participated in the conspiracy during the relevant time frame, and, in any event, transactions reasonably outside the listed dates are admissible because the indictment alleges "on or about" those dates. *See United States v. Castillo*, 140 F.3d 874, 885 (10th Cir. 1998) (citations omitted). Defendant

-12-

Redifer references his transactions with Mr. Quick beginning in May 2010 as being outside the indictment. These early transactions cannot be counted as part of the conspiracy conduct, but there was no prejudicial harm in their admission because there was sufficient evidence of defendant Redifer's participation during the scope of the conspiracy. The court finds no variance from the indictment that constitutes reversible error.

**X.    Accumulated Error**

Finally, defendant Redifer argues that even if the errors identified above were harmless, they prejudiced him in the aggregate, requiring a judgment of acquittal or a new trial. The court disagrees. As explained above, none of the alleged errors were actually errors (even harmless). They therefore cannot be considered cumulatively. *See United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir. 1970) ("Because there was no error in the trial, there is no occasion for us to employ a cumulative-error analysis in order to determine whether defendant's substantial rights were affected."). Defendants are not entitled to any relief.

**XI.   GPS Tracking of Defendant Hohn's Vehicle**

Defendant Hohn raises only one issue on his own: whether the GPS tracking of his vehicle violated his right to be free from unreasonable searches. He also raised this issue in a motion to suppress, which the court denied.

The court analyzed this issue at length in its ruling on the motion to suppress. The analysis need not be repeated here. The court stands by its previous reasoning and finds no basis for a judgment of acquittal or a new trial.

**XII.  Conclusion**

For all of the reasons stated above, neither defendant Redifer nor defendant Hohn is entitled to a judgment of acquittal or a new trial.

**IT IS THEREFORE ORDERED** that Defendant Redifer's Motion for Judgment of Acquittal and/or Motion for New Trial (Doc. 322) is denied.

**IT IS FURTHER ORDERED** that Defendant Hohn's Motion for Judgment of Acquittal, or in the Alternative, Motion for New Trial (Doc. 323) is denied.

Dated this 20th day of December, 2013, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**